IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Donald Johnson, | ) | Civil Action No. 8:10-cv-2716-RMG -JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On October 15, 2007, Plaintiff protectively filed Title II and Title XVI applications for DIB and SSI, respectively, alleging an onset of disability date of March 1, 2007.  [R. 92–107, 113.]  The claims were denied initially on February 1, 2008 and were denied on reconsideration by the Social Security Administration ("the Administration") on June 5, 2008.  [R. 70–78.]   On June 27, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 79], and on October 2, 2009, ALJ Glen H. Watkins conducted a de novo hearing on Plaintiff's claims [R. 27–53].

The ALJ issued a decision on December 4, 2009, finding Plaintiff was not disabled. [R. 13–22.]  The ALJ noted Plaintiff alleged disability due to depression, bi-polar disorder, post traumatic stress disorder, spinal injury, problems with both hips, missing deltoid in right arm, nerve problems in both arms, and severe muscle spasms in his left side.  [R. 18.] The ALJ found Plaintiff had severe impairments of arthritis of the back and neck, osteoarthritis, post traumatic stress disorder, depression, polyarthralgia, and myalgia.  [R. 15, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of headaches and shoulder pain.  [*Id.*]   The ALJ considered Listings 1.00, 14.00, 12.04, and 12.06 and determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 16, Finding 4.]   Moreover, the ALJ found Plaintiff had the residual functional capacity to perform light work, except that Plaintiff could only

> occasionally climb ramps, stairs, ladders, ropes and scaffolds, or balance, stoop, kneel, crouch, and crawl.  In addition, [Plaintiff] should avoid concentrated exposure to excessive vibrations and hazards.  His work is limited to simple, routine repetitive tasks with occasional interactions with the public.

2

> Light work involves lifting nor more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds, as well as sitting, standing and walking for 6 hours in an 8-hour workday.

[R. 17, Finding 5.]  The ALJ also concluded Plaintiff was unable to perform any of his past relevant work [R. 20, Finding 6], but, relying on the testimony of a vocational expert, the ALJ determined jobs existed in significant numbers in the national economy Plaintiff could perform [R. 20, Finding 10].

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined review, finding no reason under its rules to review the ALJ decision. [R.1–6.]  Plaintiff filed this action for judicial review on October 21, 2010.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff asserts the following errors were made by the ALJ and/or the Appeals Council:

1. the Appeals Council failed to explicitly consider new and material evidence presented in Dr. Kooistra's and Dr. Early's records that demonstrates Plaintiff is unable to perform even the sedentary level of work, bolsters Plaintiff's credibility, and supports evidence that was before the ALJ [Doc. 13 at 16–22];

2. in light of all evidence of record, including the new evidence presented to the Appeals Council, substantial evidence does not support the decision of the Commissioner [*id.* at 22–23];

3. the ALJ found significant mental limitations but failed to incorporate them into his hypothetical to the vocational expert [*id.* at 24–27]; and

4. the ALJ erred in his analysis of Plaintiff's credibility [*id.* at 27–30].

In response, the Commissioner argues his decision is supported by substantial evidence. [Doc. 14.]  Specifically, the Commissioner argues

3

1.     the Appeals Council was not required to articulate its rationale concerning the additional evidence submitted by Plaintiff [*id.* at 6–17];

2.     substantial evidence supports the Commissioner's decision even in light of the new evidence [*id.* at 17–18];

3.     the ALJ was not required to place moderate limitations in concentration, persistence, or pace in his hypothetical to the vocational expert [*id.* at 18–20]; and

4.     the ALJ reasonably assessed Plaintiff's credibility [*id.* at 20–21].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76

4

F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or

8

before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889

9

F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

10

claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id*.  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id*.

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

13

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(e), 416.927(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make

14

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*, 829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably

15

be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

16

pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### The Appeals Council Is Not Required to Articulate Its Rationale With Respect to Additional Evidence

Plaintiff contends "the Appeals Council must articulate its reasoning regarding review of additional evidence in order to permit meaningful judicial review."  [Doc. 17 at 3 (citing *Harmon v. Apfel*, 103 F. Supp. 2d 869 (D.S.C. 2000)).]  The Commissioner argues

> The Appeals Council's denial of a request for review is not analogous to an ALJ's decision (so as to necessitate a specific rationale), as Plaintiff would have the Court believe. Social Security regulations explicitly require the ALJ, in his or her decision, to "give[] the findings of fact and the reasons for the decision." 20 C.F.R. §§ 404.953(a), 416.1453(a). In contrast, neither the regulations nor agency policy require articulated reasons in an Appeals Council denial of review, since, in that circumstance, the Appeals Council is not issuing a decision or making findings of fact.

[Doc. 14 at 9.] As explained below, in light of a recent decision of the Fourth Circuit Court of Appeals, the Court agrees with the Commissioner that the Appeals Council need not articulate its reasoning for denying review of a decision even if it incorporates new evidence into the record.

As both parties noted in their briefs, there has been a split in decisions in the Fourth Circuit on the issue of whether the Appeals Council is required to articulate its reasons for denying review of a decision after incorporating additional evidence into the record.[6] The Fourth Circuit recently addressed this split in *Meyer v. Astrue*, holding

> the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, *i.e.*, "consider new and material evidence . . . in deciding whether to grant review." *Wilkins* [*v. Sec'y, Dep't of Health & Human Servs.*], 953 F.2d [93,] 95 [(4th Cir. 1991)]; *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006) (finding

---

[6] *Compare, e.g., Hollar v. Comm'r of Soc. Sec. Admin.*, 194 F.3d 1304, 1999 WL 753999, at *1 (4th Cir. 1999) (unpublished table decision) (agreeing with the Eighth Circuit Court of Appeals' decision in *Browning v. Sullivan*, 958 F.2d 817 (8th Cir. 1992), that the Appeals Council need not articulate its own assessment of additional evidence and noting the federal "regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision"), *with Jordan v. Califano*, 582 F.2d 1333, 1335–36 (4th Cir. 1978) (concluding that "the opinion of the appeals council, stating as it did only that the additional evidence had been considered, was plainly deficient"); *see also Jackson v. Astrue*, No. 08-579, 2009 WL 1181178, at *5 (D.S.C. May 1, 2009) (discussing split of authority within the Fourth Circuit).

18

> "nothing in the statutes or regulations" requires the Appeals Council to articulate its reasoning when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting contention that Appeals Council must "make its own finding" and "articulate its own assessment" as to new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1992) (holding that "the Appeals Council may deny review without articulating its reasoning" even when new and material evidence is submitted to it).

--- F.3d ---, No. 10-1581, 2011 WL 6008976, at *5 (4th Cir. Dec. 2, 2011) (footnote omitted). However, the court went on to note,

> Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that "an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review." *Martinez*, 444 F.3d at 1207–08; *see also Damato*, 945 F.2d at 989 n.6 (noting that in "fairness to the party appealing the ALJ's decision, the Appeals Council should articulate its reasoning" when it rejects new material evidence and denies review).

*Id.* Therefore, while an explanation would be helpful for purposes of judicial review, based on *Meyer*, the Appeals Council did not err by considering Plaintiff's "new" evidence but not explaining its rationale for declining review.

**The ALJ's Decision Is Not Supported By Substantial Evidence**

Plaintiff next contends the ALJ erred in assessing Plaintiff's credibility by relying on his failure to seek medical treatment because his failure to seek medical treatment was justified by a lack of funds. [Doc. 13 at 29–30.] The Commissioner argues the existence of objective medical evidence is crucial to evaluating the intensity and persistence of a claimant's pain, and Plaintiff's subjective complaints can be rejected if they are inconsistent with objective medical evidence. [Doc. 14 at 20 (citing *Hines v. Barnhart*, 453 F.3d 559,

565 n.3 (4th Cir. 2006)).]  For the reasons stated below, the Court concludes the ALJ's decision is not supported by substantial evidence because, in determining Plaintiff's credibility, the ALJ failed to consider Plaintiff's alleged inability to afford medical treatment.

*The ALJ's Decision*

In determining whether Plaintiff was disabled, the ALJ considered Listings 1.00 and 14.00, including the relevant sub-listings, and determined Plaintiff's medical evidence failed to "document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of the listed impairments, individually or in combination." [R. 16.] Further, the ALJ considered whether Plaintiff's mental impairments met Listings 12.04 and 12.06 and found Plaintiff's mental impairments did not medically equal the criteria of these listings. [*Id.*] Moreover, the ALJ determined Plaintiff had the residual functional capacity to perform light work. [R. 17.] The ALJ noted that while he found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. [R. 18.]

Specifically, with respect to Plaintiff's credibility, the ALJ found no evidence of deterioration in Plaintiff's condition and, thus, found Plaintiff's testimony regarding his functional limitations unpersuasive. [R. 19.] Moreover, the ALJ noted that, despite his symptoms, for significant periods of time Plaintiff took only over-the-counter medications for his symptoms. [*Id.*] The ALJ further noted the record reflected very minimal or nonexistent treatment for Plaintiff's impairments. [R. 19.] The ALJ concluded, "Evidence that [Plaintiff] only takes over the counter emdications for his pain and no medication or treatment for his mental impairments, along with evidence of [Plaintiff's] activities of daily

20

living, lend little support to [Plaintiff's] assertion that he is unable to perform any substantial gainful activity."  [R. 20.]  The ALJ stated he gave Plaintiff "the benefit of the doubt" in assessing Plaintiff could perform a limited level of light work.  [*Id.*]

*The ALJ Failed to Specifically Address Plaintiff's Inability to Afford Medical Treatment*

Social Security Ruling 96-7p provides that

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.  The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

61 Fed. Reg. 34,483-01, at 34,487.  The Ruling further provides the explanations offered may provide insight into the claimant's credibility, and the Ruling lists various factors that may explain a claimant's limited treatment, including that the claimant "may be unable to afford treatment and may not have access to free or low-cost medical services."  *Id.*; *see also Futrell v. Shalala*, 852 F. Supp. 437, 441 (E.D.N.C. 1994) (concluding "that without affording [the claimant] the opportunity to document her financial condition, the ALJ committed error in finding that [the claimant's] testimony was totally discredited by her failure to seek medical treatment").  Additionally, the Fourth Circuit has held "[a] claimant may not be penalized for failing to seek treatment she cannot afford," *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), because "[i]t flies in the face of the patent purposes

21

of the Social Security Act to deny benefits to someone because he is too poor to obtain

medical treatment that may help him," *Gordon*, 725 F.2d at 237.

Plaintiff testified he did not take any prescription medications or go to doctors for his

symptoms because he could not afford them; thus, he just dealt with the symptoms.  [R.

36.]  At the hearing, after questioning Plaintiff about the types of medication he took, the

ALJ and Plaintiff engaged in the following colloquy:

> A        Nope I don't, I don't have any [medication for the PTSD
> or depression].  I just deal with it.  It's not easy at times but you
> know you just have to pray and that's all you can do.  When
> you don't have you know the --
>
> Q        Okay.
>
> A        -- doctors and stuff you know you just can't afford him
> you know you just, you just figure it out.
>
> Q        Have you tried to go to the free clinic or?
>
> A        Yeah.  I have tried.
>
> Q        How, how'd that work?
>
> A        Well, I went there when my back went out a few years
> back and he popped it back in place.  I was fine for awhile.  It
> hadn't popped back out since.  I mean it's constant pain . . .
> And then when this other -- you know I've seen Coley and
> everybody from that chiropractor . . . And you know I haven't
> seen him in months because you know I, I can't you know – I
> always paid him cash so.  I don't have any insurance right now
> because I you know I spent all my money.
>
> Q        Okay.
>
> A        In the last -- living in the last three years.

[R. 36–37.]  Further, an entry in Plaintiff's records by Dr. Coley mentioned Plaintiff's

financial difficulties in affording medical treatment; specifically, Dr. Coley noted in

November 2008 Plaintiff was in obvious pain and discomfort and needed counseling and physical therapy but was "in some significant financial difficulty since he was unable to work." [R. 336.]

Upon review of the record, the Court concludes the ALJ's decision is not supported by substantial evidence because it is not evident that the ALJ took Plaintiff's financial inability into consideration when determining Plaintiff's credibility. In contravention of the requirements of SSR 96-7p, the ALJ drew negative inferences in evaluating Plaintiff's credibility without fully exploring with Plaintiff at the hearing the reasons why he stopped seeking medical help. Specifically, in assessing Plaintiff's credibility, the ALJ noted

> the record reflects very minimal or nonexistent treatment for claimant's impairments. Since his alleged onset date, there is no evidence that claimant sought or received any medications or counseling designed to treat psychiatric or mental symptoms. In addition, since his alleged onset date, the claimant has had only a couple appointments with his physician, Dr. Scott Coley.

[R. 19.] Nowhere in his decision does the ALJ address Plaintiff's allegations that he could not afford medical treatment and, therefore, only went to the doctor a few times and took only over-the-counter medications. However, as previously stated, the ALJ concluded

> Evidence that the claimant only takes over the counter medications for his pain and no medication or treatment for his mental impairments, along with evidence of claimant's activities of daily living, lend little support to claimant's assertions that he is unable to perform any substantial gainful activity.

[R. 20.] Therefore, Plaintiff's lack of medical evidence played a substantial role in the ALJ's findings regarding Plaintiff's credibility. Without a discussion of Plaintiff's allegations that he could not afford medical treatment that would document his impairments, the Court

can only conclude Plaintiff was "penalized for failing to seek treatment []he cannot afford," *Lovejoy*, 790 F.2d at 1117. *Cf. Makupson v. Astrue*, No. 3:08-3587, 2010 WL 1254921, at *8 (D.S.C. Mar. 1, 2010) (holding any error was harmless as to the ALJ's discussion of the claimant's credibility with respect to her inability to afford treatment because the ALJ specifically questioned the claimant at the hearing about her inability to afford treatment, the claimant had received a referral for financial assistance regarding treatment for one impairment, and the claimant sought treatment for other impairments but did not complain about or ask for any treatment for the impairment at issue). Accordingly, the ALJ's decision to deny benefits is not supported by substantial evidence, and the case should be remanded to the Commissioner, who should provide Plaintiff an opportunity to show good cause for his failure to obtain treatment.[7] *See Gordon*, 725 F.2d at 237 (holding that because the applicable Social Security Ruling provided that "before a person is denied benefits for failure to follow prescribed treatment, he will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so," the case should be remanded to the Commissioner with instructions that the claimant "be given the opportunity to show good cause for his failure to obtain treatment").

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and the case be

---

[7] Because the Court recommends remanding the case on this basis, the Court does not address Plaintiff's argument that the ALJ failed to incorporate Plaintiff's significant mental limitations into the ALJ's hypothetical to the vocational expert. On remand, the Commissioner should evaluate Plaintiff's argument and ensure the Commissioner's decision is free of error with respect to the hypothetical posed to the vocational expert.

REMANDED to the Commissioner for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 4, 2012
Greenville, South Carolina