# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Donald Johnson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 8:10-2716-RMG |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying him Disability Insurance Benefits and Supplemental Security Income. In accord with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to the United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation dated January 4, 2012 recommending that the decision of the Commissioner be reversed and remanded. (Dkt. No. 23). The Commissioner filed objections to the Report and Recommendation and argued that the decision should be affirmed. (Dkt. No. 25). After a careful review of the record, the decision of the Administrative Law Judge ("ALJ") and the applicable legal standards, the Court reverses the decision of the Commissioner and remands the matter to the Commissioner for further action consistent with this opinion, as further set forth below.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than [a] preponderance" of evidence. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual findings that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings . . . ." *Vitek*, 438 F.2d at 1157-58.

Rules and regulations of the Social Security Administration mandate that the Commissioner make a systematic and careful review of the medical record and other evidence

presented by the claimant, which includes the reviewing and weighing of all relevant opinions and diagnoses. The Commissioner must evaluate each disability claim utilizing a five step process, which begins at Step One with a determination of whether the claimant is still employed. 20 C.F.R. § 404.1520(a). If the claimant is not gainfully employed, the Commissioner must consider at Step Two the severity of all of the claimant's impairments. An impairment is "severe" if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." § 1520(a)(4)(ii), (c). If the claimant has one or more "severe" impairments, the Commissioner must then consider at Step Three whether any of the severe impairments meet or equal a listing in Appendix 1, which would automatically establish the claimant's disability. § 1520(a)(4)(iii). If the claimant does not satisfy one of the listing requirements, the Commissioner must move to Step Four and assess the claimant's Residual Functional Capacity "based on all the relevant medical and other evidence." § 1520(a)(4)(iv), (e). Thereafter, the Commissioner must determine if the claimant is able to perform his past relevant work and, if not, whether there is other available work for the claimant to perform. § 1520(a)(4)(v), (g).

Social Security regulations provide special consideration under certain circumstances for various classes of medical opinions. If a treating physician's opinions are well supported and not contradicted by other substantial evidence in the record, it is entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Even where a physician's opinions are not given "controlling weight", the regulations provide for careful consideration of whether the expert examined the patient, the length and nature of the treatment relationship and if the expert is a specialist. § 404.1527(d)(1)-(6).

**Factual Background**

Plaintiff asserted his claim of disability on the basis of a broad range of alleged impairments, including various orthopaedic and psychiatric difficulties. His medical history, particularly his history of traumatic injuries, was quite remarkable. In 1978, at age 19, he was involved in a serious motorcycle accident in which his wife died and he suffered bilateral wrist fractures, a right hip dislocation and a closed head injury. Record (hereafter "R.") at 385. This was followed in 1987 by another motorcycle accident, when he was struck by an automobile and suffered a lumbar vertebral fracture. *Id.* Despite these injuries, he was able to recover from these traumatic incidents and was able to work as a welder. However, by the mid 2000's Plaintiff began experiencing worsening and radiating pain associated with his past orthopaedic injuries. *Id.* He left employment as a welder on or about March 1, 2007 and has not worked since that time. R. at 15. In 2008, Plaintiff had another motorcycle accident when he struck a deer. R. at 385.

Following an administrative hearing conducted on October 2, 2009, an Administrative Law Judge (hereafter "ALJ") issued a decision on December 4, 2009 in which he found at Step Two that Plaintiff had the following "severe" impairments: "arthritis of the back and neck, osteoarthritis, post traumatic stress disorder, depression, polyarthralgia and myalgia." R. at 15. The ALJ then assessed each of Plaintiff's "severe" impairments and concluded that none satisfied a listing under a Step Three analysis. The ALJ then commenced a Step Four analysis to determine the Plaintiff's Residual Functional Capacity. Although he found that these multiple orthopaedic and psychiatric impairments "could reasonably be expected to cause the alleged symptoms" complained of by Plaintiff, most notably severe, unremitting pain, he further found

that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." R. at 18. In support of his finding that Plaintiff's complaints were not credible, the ALJ noted that Plaintiff had received "minimal or nonexistent treatment for the . . . impairments" and for "significant periods of time . . . the claimant has not taken medication for those symptoms other than over the counter medications." R. at 19.

Plaintiff produced certain records and other documents from a treating physician, Dr. Scott A. Conley, in which the physician concluded that the claimant was disabled from even sedentary work as a result of his multiple orthopaedic injuries. R. at 335, 337. The ALJ gave Dr. Conley's opinions limited weight, finding little objective evidence in the record to support his conclusions and noting that the treating physician "apparently relied quite heavily on the subjective report or symptoms and limitations provided by the claimant, and seemed to uncritically accept most, if not all, of what the claimant reported." R. at 19.

Plaintiff testified at the administrative hearing before the ALJ that he had been forced to live with his pain because he could not afford medical treatment or prescription medications. R. at 36. Dr. Conley also documented in his medical record Plaintiff's need for "long term treatment . . . counseling and physical therapy" but that the patient "is in some significant financial difficulty since he is unable to work." R. at 336. This was also confirmed in a March 2010 note of an evaluating neurologist, Dr. Carol Kooistra, who stated that "[b]ecause of financial limitations he has not been seen by a physician for a number of years." R. at 376. Despite Plaintiff's testimony that his lack of medical treatment and medication arose from his lack of financial resources, the ALJ did not address this issue or make findings regarding the accuracy of Plaintiff's assertions.

-5-

Relying heavily on his findings that Plaintiff was not credible in his complaints of severe pain associated with his numerous traumatic injuries, the ALJ concluded that Plaintiff was not disabled, was capable of performing "light work" and there were jobs "in significant numbers in the national economy that the claimant can perform." R. at 17, 20. Following the ALJ's decision, Plaintiff's counsel submitted to the Appeals Council additional medical evaluations and documentation to address some of the concerns raised in the ALJ's decision. These included a neurological evaluation by Dr. Carol Kooistra, who performed nerve conduction studies that established the presence of bilateral radicularopathies in Plaintiff's cervical spine. R. at 376. She also determined in a motor examination that Plaintiff demonstrated "diffuse give way weakness in the upper extremities." *Id.* Dr. Kooistra's diagnoses included Chronic Pain Syndrome, myelopathy and osteoarthritis. *Id.* Further, she opined that Plaintiff was disabled from performing sedentary work because of his orthopaedic injuries and chronic pain. R. at 388-389.

Plaintiff, through counsel, also submitted an evaluation conducted by Dr. Gordon Early, a board certified specialist in occupational medicine. Dr. Early documented multiple orthopaedic abnormalities and diagnosed Plaintiff with "[d]iffuse body pain relating to his multiple accidents." R. at. 386. Dr. Early also found that Plaintiff had been depressed for the past five years and likely suffered from bi-polar disorder. *Id.* Dr. Early stated that due to Plaintiff's condition he could do no more than sedentary work and questioned whether "[h]is mental illness would impair his focus and attention in most sedentary jobs." R. at 388.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Without specifically addressing the newly produced evidence, including the evaluations of two specialist

physicians, Dr. Koositra and Dr. Early, the Appeals Council simply stated that "this information does not provide a basis for changing the Administrative Law Judge's decision." R. at 2. With the denial of the request for review to the Appeals Council, the ALJ's decision became the final action of the Commissioner. Plaintiff thereafter filed a timely appeal of the adverse decision to this Court.

## Discussion

**A. Failure of the Fact Finder to Weigh the Newly Produced Medical Opinions Presented to the Appeals Council and Reconcile this New Evidence with Other Evidence in the Record.**

The administrative scheme for handling Social Security claims permits the claimant to offer evidence in support of the claim initially to the ALJ. Once the ALJ renders a decision, the claimant is permitted to submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. § 404.968, 404.970(b). This new evidence is then made part of the record. The regulations, however, do not require the Appeals Council to expressly weigh the newly produced evidence and reconcile it with previously produced evidence before the ALJ. Instead, the Appeals Council is required only to make a decision on whether to review the case and, if it chooses not to grant a review, there is no express requirement that the Appeals Council weigh the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

As the Fourth Circuit recently addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by

the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all of the evidence is "one-sided", a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence", there is a need to remand the matter to the fact finder "to reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder". *Id.*

In this matter, the ALJ gave "great weight" to the consulting evaluation of an internist, Dr. Prudencio Rosas, whose findings tended to minimize the impairments claimed by Plaintiff. R. at 19-20, 306-310. He also gave little weight to the opinions of Plaintiff's treating physician, Dr. Conley, finding little support in the record for his conclusions regarding Plaintiff's allegedly significant and disabling impairments. R. at 19, 335-39. The newly produced evidence at the Appeals Council level included clinical evaluation of Plaintiff by two specialists, in neurology and occupational medicine, and diagnostic testing that addressed the claimant's alleged orthopaedic impairments. R. at 376-80, 385-89. This new evidence is generally consistent with the rejected opinions of Plaintiff's treating physician, Dr. Conley, and appears to support some of the subjective testimony of Plaintiff that the ALJ rejected as not credible.

The Court finds, under the authority of *Meyer*, that remand is necessary for the fact finder to weigh the newly produced medical evidence and to reconcile this with other evidence previously in the record. On remand, the ALJ will necessarily need to address the relative weight given to the medical opinions of generalists vs. specialists and to reevaluate the prior findings

regarding the credibility and weight given the testimony of Dr. Conley and Plaintiff in light of the newly produced evidence.

**B. Failure to Evaluate Plaintiff's Claim of Lack of Financial Resources as an Explanation for not Pursuing Additional Treatment or Prescription Pain Medications**

A key element of the ALJ's finding that Plaintiff was not a credible witness regarding his claim of severe and chronic pain associated with his orthopaedic impairments was his failure to seek medical treatment and prescription pain medications. R. at 16, 19, 20. Plaintiff testified at the administrative hearing that he had not pursued further medical treatment from his physician because he "just can't afford him". R. at 36. He explained that due to his lack of financial resources, "I just deal with it. It's not easy at times but you know you just have to pray and that's all you can do." *Id.* Plaintiff's treating physician, Dr. Conley, documented in a 2008 office note Plaintiff's "significant financial difficulty since he is unable to work" and need for "long term treatment . . . counseling and physical therapy." R. at 336. The ALJ failed to address this issue and there is, therefore, no finding regarding whether Plaintiff's alleged lack of financial resources was an explanation for his failure to pursue medical treatment.

It is well settled that a claimant for Social Security benefits should not be "penalized for failing to seek treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Social Security Ruling 96-7P expressly addresses the situation where a claimant asserts that he has not pursued medical treatment because of a lack of financial resources. *See* SSR 96-7P, 1996 WL 374186. In such a situation, the fact finder is admonished from drawing "any inferences about an individual's symptoms and their functional effects" from a failure to pursue medical treatment "without first considering any explanations that the individual may provide . . .

." *Id.* at 7. Among the examples provided by the Ruling is the situation where the claimant "may be unable to afford treatment or may not have access to free or low-cost medical services." *Id.* at *8.

Remand is obviously necessary for the fact finder to address the issue of Plaintiff's financial condition and the alleged impact of this on his failure to pursue medical treatment. To the extent the ALJ on remand continues to consider Plaintiff's failure to pursue medical treatment as evidence weighing against his credibility, it is necessary that specific factual findings be made concerning what resources were available to Plaintiff and whether his alleged inability to pay for treatment, diagnostic studies and prescription medications contributed to his failure to seek medical treatment for his various impairments.

## Conclusion

Based upon the foregoing, the decision of the Commissioner is hereby **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner for further action consistent with this Order.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
February 6, 2012